| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | <u>FOR PUBLICATION</u> |
| ------------------------------------------------------------x | |
| In re | Chapter 11 Cases |
| ADELPHIA COMMUNICATIONS<br>CORPORATION, et al., | Case No. 02-41729 (REG)<br><br>(Jointly Administered) |
| Debtors. | |
| ------------------------------------------------------------x | |
| DEVON MOBILE COMMUNICATIONS<br>LIQUIDATING TRUST, | Adv. Pro. No. 04-03192 |
| Plaintiffs, | |
| v. | |
| ADELPHIA COMMUNICATIONS<br>CORPORATION, et al., | |
| Defendants. | |
| ------------------------------------------------------------x | |

<u>**MEMORANDUM DECISION ON**
**DEVON MOBILE COMMUNICATIONS LIQUIDATING TRUST'S**
**MOTION FOR AN ORDER THAT DEFENDANTS' PLANNED**
**RESPONSE TO THIS COURT'S MARCH 30, 2005 RULING IS INADEQUATE**</u>

**A P P E A R A N C E S:**

Klehr, Harrison, Harvey, Branzburg
& Ellers, LLP
919 Market Street
Suite 1000
Wilmington, DE 19801
By: Joanne B. Wills, Esq.
    Matthew J. Borger, Esq.
Counsel for Adelphia Communications Corp., et al.

1

Young, Conaway, Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
By:   Richard H. Morse, Esq.
      Martin S. Lessnor, Esq.
      Michael R. Nestor, Esq.

**CECELIA G. MORRIS, UNITED STATES BANKRUPTCY JUDGE:**

Devon Mobile Communications Liquidating Trust (the "Liquidating Trust") has brought a "Motion for an Order That Defendants' Planned Response to this Court's March 30, 2005 Ruling is Inadequate." Defendants have filed a Memorandum in Opposition to Plaintiff's Motion Regarding Defendants' Production of Documents. Oral argument on the Rule 34 Motion was heard on May 5, 2005 (the "Hearing"). In consideration of the arguments made at the Hearing, the Liquidating Trust's Motion, Adelphia's Opposition thereto, and the authorities cited by the parties, the Court denies the Liquidating Trust's Motion in its entirety, for the reasons set forth below.

## BACKGROUND FACTS

On November 3, 1995, Devon G.P., Inc. ("Devon G.P.") and Adelphia Communications Corporation ("Adelphia") entered into the Agreement of Limited Partnership (the "Limited Partnership Agreement") of Devon Mobile Communications, L.P. ("Devon"). Devon was formed for the purpose of taking advantage of certain minority and women owned business incentives in procuring personal communication services (PCS) licenses offered by the FCC. Adelphia owned 49.9% of Devon. Devon General Partner, Inc. held the remaining 50.1%.

The Liquidating Trust is the successor in interest to Devon and was established pursuant to an October 1, 2003 Order (the "Devon Confirmation Order") of the United

2

States Bankruptcy Court for the District of Delaware in In re Devon Mobile Communications, L.P., et al., Case No. 02-12431 (PJW) confirming the First Amended Joint Plan of Liquidation of Devon Mobile Communications, L.P. and the Devon Creditors Committee (the "Devon Plan"). By and through the Devon Plan and the Devon Confirmation Order, all of Devon's assets, including its causes of action, were transferred to the Liquidating Trust.

On June 21, 2004, the Liquidating Trust commenced this adversary proceeding by filing its complaint (the "Complaint") alleging damages for certain preferential transfers, fraudulent conveyances and breaches of contract, deepening insolvency and alter ego liability. Pursuant to the allegations contained in the Complaint,[1] Adelphia was to provide virtually all of the working capital to Devon. Devon and Adelphia also entered into specific services agreements in which Adelphia agreed to provide Devon with certain services.[2] Adelphia also allegedly had control over Devon's bank accounts. It is further alleged in the Complaint that Adelphia dominated Devon, billed Devon for the aforementioned "services" for an amount not equivalent to the value of services billed, i.e. overcharged Devon for the services provided, and caused Devon to make payments for services which were preferential in nature. Additionally, the Complaint indicates that Adelphia caused Devon to improperly transfer funds as a return of capital contributions in violation of the terms of the Limited Partnership Agreement. Another allegation set forth in the Complaint is that Adelphia continued to cause Devon to incur obligations knowing full well it would not be able to provide the capital funding it had represented it

---

[1] Facts pertaining to allegations made in the complaint are provided for background purposes only and should not be construed as a finding of fact by the Court.
[2] These services included human resources administration, product pricing, accounts payable, tax preparation, payroll, financial statement preparation, bank account reconciliation, accounting services, purchasing, insurance, collection of receivables, and cash management.

would provide to Devon, all the while transferring funds from Devon in payment of the services agreements and in return of their (Adelphia's) capital contributions. The Liquidating Trust also contends in the Complaint that Adelphia dominated and controlled Devon to the extent that Devon was merely an instrumentality of Adelphia. The Complaint denominates Adelphia as a 'de facto' general partner of Devon LP. Adelphia is also accused of breaching its duty to fund Devon's operations, and it is alleged that this breach, coupled with Devon's inability to procure alternate financing as result of Adelphia's formerly exclusive financing of Devon, caused Devon to fail. Devon LP filed for Chapter 11 protection on August 19, 2002. Devon is seeking to have Adelphia return all the allegedly preferential and improper transfers and also to pay all creditors of the Devon Liquidating Trust.[3]

In accordance with Federal Rules of Civil Procedure 26 and 37, this Court has permitted the Liquidating Trust broad discovery respecting information relevant to its claims against the Adelphia defendants. *See* ECF Docket No. 60, Order entered April 19, 2005 (the "Production Order"). *See also* this Court's March 30, 2005 Oral Ruling on Plaintiff's Motion to Compel Production of Documents (the "Oral Ruling").

The Adelphia defendants subsequently informed the Liquidating Trust that they planned to comply with the Oral Ruling by making their warehoused document archive available for inspection by the Liquidating Trust, in accordance with their interpretation of Fed. R. Civ. P. 34(b). In response, the Liquidating Trust filed a Motion for an Order that Defendants' Planned Response to this Court's March 30, 2005 Ruling is Inadequate, ECF Docket No. 58 (the "Rule 34 Motion"). Adelphia filed a Memorandum in

---

[3] Adelphia filed an answer on August 20, 2004, ECF Docket No. 8, asserting various affirmative defenses and several counterclaims.

4

Opposition to Plaintiff's Motion Regarding Defendants' Production of Documents, with affirmations and exhibits annexed thereto, *see* ECF Docket No. 65, (collectively, the "Opposition").

In the Opposition, Adelphia indicates that as a result of and in connection with an SEC investigation of Adelphia's credit facilities, as well as grand jury investigations into Adelphia's activities and an investigation being conducted by a Special Committee of the Adelphia Board of Directors, Adelphia issued directives to all Adelphia's personnel to retain all documents related to Adelphia's business, which are currently being stored in a document archive in Coudersport, Pennsylvania. The archive contains approximately 20,000 large bankers boxes of business records as well as over 600 boxes of business records deemed relevant to the various investigations underway, which are segregated in a separate "evidence" room.

The Liquidating Trust contends that Adelphia's offer to make available the 20,000 bankers boxes is not acceptable 1) because storage of the documents at the Data Center is not part of Adelphia's "usual course of business;" 2) because Rule 34(b) does not permit a responding party to produce materials designated by a request for production in the midst of a large quantity of un-requested, non-responsive materials, and finally 3) because the offer to permit inspection at the data center is "diametrically opposed" to the representations made by Adelphia to the Court in opposition to the Plaintiff's motion to compel.

The Adelphia defendants respond that the documents archived in the Data Center are kept in the usual course of Adelphia's business. Furthermore, Adelphia points out that the document archives are well organized and therefore the Liquidating Trust will be

able to avoid non-responsive documents to a reasonable extent and "easily" find what it seeks. In support of its contention that the Data Center is sufficiently indexed and organized, Adelphia has submitted photographs of the warehouse (*see* Exhibit A to the Opposition); photographs of the labels placed on the outside of the boxes identifying the contents of the boxes (*see* Exhibits B and C) and copies of all the indexes to departmental documents which the Adelphia defendants' deem relevant, i.e. the Accounting Department boxes index; Legal Department boxes (this index has been withheld, Adelphia is to produce non-confidential boxes and a privilege log); Insurance Department boxes index, etc. The photographs provided show that the boxes have not only been indexed but also specifically labeled identifying the department they originate from and the contents of the box (*see* Exhibits D through L, indexes and label photographs).

## DISCUSSION

### I. Federal Rule of Civil Procedure 34(b)

The issue before the Court is whether compliance with the Court's May 5, 2005 directive regarding production of documents may be accomplished by making a warehouse of documents available for inspection and copying by the Liquidating Trust, in accordance with Fed. R. Civ. P. 34(b), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7034 which states in pertinent part:

> Rule 34. Production of Documents and Things and Entry Upon Land for Inspection and Other Purposes (b) Procedure…A party who produces documents for inspection shall produce them <u>as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request.</u>

(emphasis supplied).

6

Resolution of this issue turns upon whether storage of Adelphia's documents pursuant to SEC and corporate directives is in the "usual course" of Adelphia's business. If so, Adelphia may provide the Liquidating Trust access to its warehouse, and the Liquidating Trust must locate the documents it seeks. If not, Adelphia must search through its warehouse, identify documents responsive to the document requests, copy and forward them to the Liquidating Trust.

## II. Maintenance of the Storage Facility is in the Conduct of Adelphia's Business.

The Liquidating Trust states that Adelphia is not in the business of maintaining records for litigation and therefore, its maintenance of records to accommodate investigations into its activities is not in the conduct of its business within the meaning of Rule 34(b). The *Wagner v. Dryvit Systems, Inc.*, 208 F.R.D. 606 (D. Neb. 2001) case is cited by the Liquidating Trust in support of this argument. In *Dryvit*, the district court did indicate that "[t]he repository [where responsive documents were allegedly stored] is not Dryvit's business..." *id.* at 611. A review of the *Dryvit* case shows however that the district court's real concern with the proposed method of production was that the documents were kept in "no apparent order," *id.* at 610. Although the Liquidating Trust maintained at oral argument that "the *Dryvit* case was in no way based upon the existence or the lack of existence of an index..." *see* Transcript of May 5, 2005 hearing at p. 6, l. 16-18, in fact, the *Dryvit* court indicated at least three times its dismay that no index existed or had been provided for the document repository. 208 F.R.D. at 609 ("The repository documents were located in four oversized file cabinets with no index provided to plaintiffs' counsel."); *id.* at 609 ("...despite persistent attempts by plaintiffs' counsel to receive an index of documents located in the repository, an index has never been

7

provided to the plaintiffs."); and *id.* at 611 ("There is also no evidence to explain why Dryvit has not kept a record for its own use concerning the location of its documents within the repository and the subject of those documents."). The Court disagrees with the Liquidating Trust because it is clear that the absence of a comprehensive index in the *Dryvit* case was significant to the district court's determination that access to the document depository was not a permissible method of production. The Court cannot agree with the argument that only those parties who conduct business as document archivists would be permitted to produce documents in as they are kept in ordinary course of business, an argument made by the Liquidating Trust in reliance on a single sentence contained in the *Dryvit* case. Rule 34(b) should not be read to have such a narrow application. The purpose behind the 1980 Amendment that added the "usual course of business" language to Rule 34(b) was to allow the discovering party access to business records in the manner documents were normally maintained by the producing party to prevent deliberate "shifting of the materials from the sequence which they were ordinarily kept to somewhere else..." 8A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2213. The solution proposed by the 1980 Amendment was obviously intended to include all business forms, and as a logical extension documents stored as a matter of course or by official, i.e. corporate or governmental, directive would have to be included within the "usual course of business" rubric. The Court qualifies its ruling by explicitly stating that in order to satisfy the requirements of Rule 34(b) any archived documents produced must be thoroughly indexed, the boxes accurately labeled and the depository kept in good order. The Court does not endorse a method of document production that merely gives the requesting party

8

access to a "document dump," *see Hagemeyer North America v. Gateway Data Sciences Corp.*, 222 F.R.D. 594, 598 (E.D. Wis. 2004), with an instruction to the party to "go fish," *see Doe v. Nat'l Hemophilia Foundation*, 194 F.R.D. 516, 518 (D. MD. 2000). Such is emphatically not the situation presented to the Court in this matter; the Adelphia defendants have produced photographs of an orderly facility with neatly stacked rows of boxes organized by department and labeled as to content; furthermore, extensive indexes of the various departmental archives exist and are being provided in electronic format to the Liquidating Trust.

The Liquidating Trust's argument that stored documents do not fall within Rule 34(b)'s "usual course of business" category glosses over the fact that the parties in this case, Devon Mobile Communications as well as the Adelphia Defendants, are bankruptcy debtors. Business records for the periods at issue have been archived on both sides to comply with official directives and document retention protocols. In fact, at oral argument counsel for the Adelphia defendants averred that the documents responsive to the Liquidating Trust's requests do not exist elsewhere for the period at issue. *See* Tr. at p. 41. Adelphia also indicated that the Liquidating Trust's production method was identical to that proposed by Adelphia here, save for the volume – Devon gave Adelphia access to approximately 200 boxes of business records stored in unlabeled boxes in a warehouse in Brooklyn, New York.[4] Adelphia's counsel states that they "combed" through the boxes and selected the documents for copying, and proposes that the Liquidating Trust do likewise with Adelphia's warehouse of documents. Where, as here,

---

[4] At oral argument, it was clarified that Adelphia had requested access to Devon's document archives, rather than being directed to the warehouse storage by the Liquidating Trust. The Court does not think this distinction is significant and does not fully understand why the Liquidating Trust did not immediately take advantage of the unfettered access to its archives offered by Adelphia.

9

all extant corporate records for the period at issue are kept in a separate document archive pursuant to official directives, the Court holds they are being kept in the "usual course of business."

There is on-point authority for permitting access to warehoused documents of a bankruptcy debtor as being stored in the "usual conduct of business." In *Hagemeyer North America, Inc. v. Gateway Data Sciences Corp.*, 222 F.R.D. 594 (E.D. Wis. 2004), the debtor corporation's documents had been placed in a storage facility by the bankruptcy trustee. The district court held that the documents were nevertheless being kept in the usual course of business and the defendant was not required to search the records for responsive documents as the boxes of documents were clearly labeled, plaintiff was offered reasonable access to them and, importantly, there had been no intentional attempt to hide responsive documents among unresponsive ones. The latter consideration, i.e. responsive documents were not deliberately mingled with unresponsive documents, diposes of the Liquidating Trust's argument that the *Hagemeyer* case was wrongly decided in view of Rule 34(b)'s goal to "prevent a responding party from mix[ing] critical documents with others in an attempt to obscure their importance." This last argument is somewhat counterintuitive as the purpose of permitting a discovering party to conduct a personal search of the producing party's files was to prevent attempts to deliberately conceal responsive documents among irrelevant records. *See* Fed. R. Civ. P. 34 advisory committee note to the 1980 Amendment: "The Committee is advised that, 'It is apparently not rare for parties deliberately to mix critical documents with others in the hope of obscuring significance...' The sentence added by this subdivision [regarding usual course of business method of production of documents] follows the

10

recommendation of the Report." The *Hagemeyer* court specifically found that where no attempt to obscure document discovery was made, granting access to business records in labeled, indexed archives was an acceptable production in the "usual course of business." *Id.* at 598. *See also Butler v. Portland General Electric Co.*, 1990 WL 15680 (D. Or. 1990) (it is proper to produce documents as they are kept in the normal course of business where there is no indication that producing party has purposely provided documents in an inconvenient form); *In re G-I Holdings, Inc.*, 218 F.R.D. 428, 439 (D. N.J. 2003) (no allegation made that debtors' production were so disorganized as to indicate that the documents were not produced as kept in the regular course of business but rather in a manner intended to frustrate discovery). As in *Hagemeyer*, the defendants' business records are being held in a central location pursuant to official directives to preserve records for purposes of litigation. The Court cannot emphasize strongly enough that there has been no indication that an attempt to frustrate discovery has been made by Adelphia intentionally intermingling unresponsive documents with relevant documents, the concern is at its core who should be required to search through the voluminous records stored at the Data Center.

In that regard, Rule 34(b) gives the producing party the option of labeling and organizing the documents or giving the discovering party access in the usual course of business. "Accordingly, in the first instance the producing party should retain the right to choose between the production formats authorized by Rule 34(b) (but not others), but the court should have the authority where necessary to direct some disclosure of the manner of organization of the producing party's files." 8A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2213; *see also In re G-I Holdings Inc.*,

11

*supra* at 439 (producing party has the option of presenting information in one of the two ways provided in Rule 34(b)); *Rowlin v. Alabama Dept. of Public Safety*, 200 FRD 459, 462 (M.D. Ala. 2001)(Rule 34(b) leaves it to producing party to decide how it will produce its records, so long as the records have not been maintained in bad faith). The Adelphia defendants' have chosen to allow the Liquidating Trust unfettered access to non-privileged documents, *see* footnote 8 to the Opposition, and the Court holds that by so doing the Adelphia defendants have complied with Fed. R. Civ. P. 34(b).

The Adelphia Defendants' documents appear to be adequately organized to defeat the Liquidating Trust's arguments that Adelphia should be forced to cull through the boxes and produce responsive documents. *See e.g. Dryvit, supra,* at 609 (production by access not acceptable where documents were located in four oversized file cabinets with no index and not organized by date, subject or in any other way); *Kozlowski v. Sears, Roebuck & Co.,* 73 F.R.D. 73, 76 (inadequate filing system of massive records precluded access production). Through the production of indexes and photographs of the warehouse and labels affixed to the boxes, Adelphia has shown that the warehouse is not a "document dump." *See Hagemeyer, supra,* at 598.

The Adelphia defendants did originally argue before this Court that the Liquidating Trust's Motion to Compel Production of Documents should have been denied because, *inter alia*, the production would be unduly burdensome based on the sheer volume of their business documents and an allegedly disorganized Data Center. The Court is gratified to learn that Adelphia's records are so well organized and indexed that any further argument of undue burden, predicated upon the volume or organization of the documents, has been obviated by Adelphia's admission that its records are well

maintained and easily accessible. It is well settled, and reiterated in cases cited by Adelphia in opposition to the Liquidating Trust's arguments herein, that sheer volume alone is an insufficient reason to deny discovery of documents. *See In re G-I Holdings, Inc.*, *supra*, at 440.

## CONCLUSION

Adelphia is directed to submit an order consistent with this memorandum decision.

Dated: Poughkeepsie, New York
       June 10, 2005

                                        /s/ Cecelia Morris
                                             U. S. B. J.