|  | FOR PUBLICATION |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>-----------------------------------------------------------x<br>In re | Chapter 11 Cases |
| ADELPHIA COMMUNICATIONS<br>CORPORATION, et al., | Case No. 02-41729 (REG)<br><br>(Jointly Administered) |
| Debtors.<br>-----------------------------------------------------------x<br>DEVON MOBILE COMMUNICATIONS<br>LIQUIDATING TRUST, | Adv. Pro. No. 04-03192 |
| Plaintiffs,<br><br>v.<br><br>ADELPHIA COMMUNICATIONS<br>CORPORATION, et al.,<br><br>Defendants.<br>-----------------------------------------------------------x | |

**MEMORANDUM DECISION ON DEFENDANTS'
MOTION FOR RECONSIDERATION**

**A P P E A R A N C E S:**

Klehr, Harrison, Harvey, Branzburg
& Ellers, LLP
919 Market Street
Suite 1000
Wilmington, DE 19801
By:    Joanne B. Wills, Esq.
       Matthew J. Borger, Esq.
Counsel for Adelphia Communications Corp., et al.

1

Harter, Secrest & Emery, LLP
Twelve Fountain Plaza
Buffalo, New York 14202-2228
By:   Ingrid Schumann Palermo, Esq.
Counsel for Devon General Partnership, Inc. and Lisa-Gaye Shearing Mead

**CECELIA G. MORRIS, UNITED STATES BANKRUPTCY JUDGE:**

Defendants Adelphia Communications Corporation, *et al.* ("Adelphia"or the "Adelphia defendants") have brought a Limited Motion for Reconsideration (the "Reconsideration Motion") of this Court's Memorandum Decision on Defendants' Adelphia Communications Corporation, *et al.* Motion for Leave to File a Third-party Complaint ("Memorandum Decision") and Order dated April 5, 2005, ECF Docket No. 54. Reconsideration is sought pursuant to Fed. R. Civ. P. 59(e), which is made applicable to this adversary proceeding by Fed. R. Bankr. P. 9023. Adelphia contends that in denying leave to file a third-party complaint, this Court failed to correctly apply the standard for determining the third-party complaint's futility, in that the Court "improperly" considered factual assertions made by the proposed third-party defendants in their responsive papers, and failed to examine the proposed third-party complaint to determine if the allegations supported *any* legal theory under which Adelphia could obtain relief. It is Adelphia's position that the proposed third-party complaint contained a *prima facie* cause of action against Lisa-Gaye Shearing Mead ("Ms. Mead") and Devon General Partner ("Devon G.P.") (collectively, the "third-party defendants"), for aiding and abetting Adelphia in the purported tortious activity alleged by Devon Mobile Communications Liquidating Trust (the "Liquidating Trust") in the adversary proceeding complaint (the "Complaint"); that is, in connection with the Liquidating Trust's claims

against Adelphia for deepening insolvency or breach of duty to fund operations. Adelphia also argues that the Court misconstrued New York authority cited by the Court in the Memorandum Decision, to wit, *Calcutti v. SBU, Inc.*, 273 F.Supp.2d 488 (S.D.N.Y. 2003). Adelphia maintains that the Court's holding in the Memorandum Decision concerning a veil-piercing action predicated upon a contribution claim contains a legal proposition that does not exist in New York's contribution jurisprudence; specifically, that a corporate veil piercing action may not be maintained on the basis of an alleged contribution claim until such time as Adelphia actually paid a judgment for which Ms. Mead and Devon GP were adjudicated accountable. Finally, Adelphia maintains that the Court overlooked controlling decisions that should have influenced the Court's holding regarding the timeliness of Adelphia's Motion for Leave to File a Third-party Complaint (the "Leave Motion.").

## BACKGROUND FACTS

Familiarity with this Court's Memorandum Decision is presumed. *See Devon Mobile Communications Liquidating Trust v. Adelphia Communications Corp. (In re Adelphia Communications Corp.)*, 322 B.R. 509 (Bankr. S.D.N.Y. 2005). Capitalized terms not defined in this opinion have the same meaning ascribed to them in the Memorandum Decision.

## DISCUSSION

### I.   Standard on a Motion for Reconsideration

Motions for reconsideration are disfavored, because "[c]omplete disposition of discrete issues and claims is often essential to effective case management. If a court is forced to revisit earlier interlocutory rulings, much of the advantage in making the early

3

rulings would be lost." *In re Best Payphones, Inc.*, 2003 WL 1089525 at *1 (Bankr. S.D.N.Y. Mar. 10, 2003) (citations omitted). Furthermore, motions for reconsideration are not a substitute for an appeal, *see Fezzani v. Bear, Stearns & Company, Inc.*, 2004 WL 1781148 at * 1 (S.D.N.Y. Aug. 10, 2004), and "a party who fails to present their strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider." *See In re Contempri Homes, Inc.*, 281 B.R. 557, 559 (Bankr. E.D. Pa. 2002); *see also In re Bushman*, 311 B.R. 91, 96 (Bankr. D. Utah 2004) (reargument not permitted to merely advance new arguments or supporting facts **which were available** for presentation at the time of the original argument; a defendant's failure to present its strongest case in the initial briefing does not entitle it to a second chance). "The rule permitting reargument must be narrowly construed to avoid repetitive arguments on issues that the court has already fully considered." *See Best Payphones, supra*, at *2; *see also Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*, 2004 WL 1286806 *3 (S.D.N.Y. Jun. 10, 2004) (hereinafter, *ABB Lummus Global*); *Fezzani, supra*, at *1; *Houbigant, Inc. v. ACB Mercantile (In re Houbigant, Inc.)*, 914 F. Supp. 997, 1001 (S.D.N.Y. 1996). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice." *See Best Payphones, supra*, at *2. "The moving party is required to demonstrate that the Court overlooked the **controlling** decisions or factual matters that were put before the Court in the underlying motions." *See ABB Lummus Global, supra*, at *3 (emphasis supplied). It is Adelphia's contention that this Court overlooked "highly relevant authority" (which

4

the Court notes is not "controlling" authority) and relied upon a mistaken proposition of law in denying the Leave Motion.

## II. The Timeliness Factor

The Adelphia defendants maintain that reconsideration is appropriate because in ruling that the Leave Motion was untimely, the Court overlooked a body of well-settled law in which courts have granted leave to file third-party complaints despite timeliness issues. Pursuant to Fed. R. Civ. P. 14(a), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7014, a third-party plaintiff must obtain leave of the Court to file a third-party complaint if it is not submitted within 10 days of the original answer. A motion seeking leave to file a third-party complaint is addressed to the Court's discretion, in consideration of the following factors: (1) whether the movant deliberately delayed or was derelict in filing the motion; (2) whether impleading would unduly delay or complicate trial; (3) whether impleading would prejudice the third-party defendant; and (4) whether the third-party complaint states a claim upon which relief can be granted. *See Too, Inc. v. Kohl's Dep't Stores, Inc.*, 213 F.R.D. 138, 140 (S.D.N.Y. 2003). Defendants state that they are unable to locate a case in which a motion for leave to file a third-party complaint was denied when filed within the time period that the Leave Motion was filed – within 94 days of the answer. Defendants rely on cases in which various courts granted leave to file third-party complaints when longer time periods had passed, and by citing to those cases denying leave after significantly more time had elapsed. This argument ignores the fact that a motion for leave to file a third-party complaint is addressed to the Court's sound discretion. The fact that other courts have granted leave to file third-party complaints after longer time periods have elapsed is not the issue. The

5

standard on a motion to reconsider requires "[t]he moving party…to demonstrate that the Court overlooked the controlling decisions or factual matters that were put before the Court in the underlying motions." See *ABB Lummus Global, supra*, at *3. The Adelphia defendants have not cited this Court to any decision that states that it is an abuse of discretion to deny a party leave to file a third-party complaint where the moving party has filed the motion three months after the expiration of the discretionary period set forth in Fed. R. Civ. P. 14(a) without providing adequate cause for so doing. The standard for reargument is therefore not met on the timeliness issue and the Reconsideration Motion is denied in that respect.

### III. The Court's Application of the Standard for Determining Futility of the Third-Party Complaint

Adelphia states in a footnote to the Reconsideration Motion that this Court gave improper consideration to factual assertions made in the proposed third-party defendants' responsive submissions. Adelphia bases its argument on the Court's use of the word "controvert" in the Memorandum Decision. The challenged phrase, "…they controvert many of the factual allegations…" is found in the 'Background Facts' section of the Memorandum Decision. The Court naturally assumed that readers would understand that proposed third-party defendants' arguments were included to provide background for the Memorandum Decision (as the summary of the parties' arguments were contained in a section of the Memorandum Decision subtitled 'Background Facts,' the Court does not think this assumption was unreasonable). In deciding the Leave Motion the Court confined its analysis to all well-pleaded factual allegations contained in the proposed third-party complaint. "The facts and circumstances alleged in the third-party complaint, which the Court treats as true while drawing all reasonable inferences in Adelphia's favor

for the purposes of the Leave Motion, do not show the sort of improper domination and control contemplated by New York Law as predicate for a court to pierce the corporate veil." *See* Memorandum Decision at 18. Thus the Court "accept[ed] [Adelphia's] well-pleaded factual allegations as true...and [drew] all reasonable inferences in favor of [Adelphia]." *See U.S. v. West Prod., Ltd.*, 1997 WL 16646 (S.D.N.Y. Jan. 17, 1997). The Court also notes that the word controvert does not mean "disprove." Rather, controvert means to "...dispute or contest; esp., to deny (as an allegation in a pleading) or oppose in argument..." *See* BLACK'S LAW DICTIONARY 354 (8th ed. 2004). This is precisely the context in which the Court used the word controvert, and the inclusion of the third-party defendants' arguments in opposition to the Leave Motion was obviously provided merely as background for the Memorandum Decision. It is therefore unreasonable to argue that any factual contentions were "improperly" considered by this Court in rendering its decision on whether to grant leave to file a third-party complaint.

It is incumbent upon a plaintiff to allege sufficient factual allegations in a complaint to meet the necessary elements of each theory of liability brought against a defendant. The Court determined that the factual allegations concerning Ms. Mead and Devon GP did not sufficiently allege wrongful activity sufficient to pierce the corporate veil; rather, the factual assertions in the complaint were consistent with activities routinely performed in the carrying on of the business of the limited liability partnership. A plaintiff may advance numerous factual circumstances in support of its allegations, but if those assertions do not show that the proposed defendant acted wrongfully toward the plaintiff, the complaint is without merit. *See e.g. Kramer v. New York City*, 2004 WL 2429811 (S.D.N.Y. Nov. 1, 2004) (although complaint extensively itemized interactions

alleged to prove a conspiracy between the defendants, none of the facts articulated provided an example of an impermissible agreement necessary to prove the conspiracy allegation). The Adelphia defendants likewise provide the Court with numerous provisions taken from the Limited Partnership Agreement that allocate corporate responsibility to the third-party defendants, but from none of which the Court can draw an inference of collaboration in alleged wrongdoing. Furthermore, "…in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action." *See Schwinn Cycling & Fitness, Inc. v. Benonis*, 217 B.R. 790, 795 (N.D. Ill. 1997). Although the Court did not, because it was not permitted to in this context, weigh the merits of the factual allegations contained in the third-party complaint, it determined that the factual allegations, taken as true, were insufficient to show that Ms. Mead or Devon G.P. did anything other than act in accordance with the Limited Partnership Agreement while running the business of Devon L.P. As stated in the Memorandum Decision, the factual allegations in the proposed third-party complaint consist almost exclusively of a recitation of the provisions of the Limited Partnership Agreement that empowered Devon G.P. to carry on the business of Devon L.P. It is from these provisions that the Adelphia defendants claim an inference can be drawn that third-party defendants personally participated in the alleged wrongdoing contained in Counts IV and VI of the complaint, but the Court has found that no such inference can be drawn based upon the allegations contained in the third-party complaint. The Court also determined that any wrongdoing resulted in harm to the Liquidating Trust, not to Adelphia, and Adelphia does not argue that the Court's conclusion in that regard is incorrect.

Adelphia next argues that this Court neglected to examine the proposed third-party complaint to determine if the allegations contained therein supported any cause of action under which Adelphia might be entitled to relief. In so doing the Court is said to have failed to recognize that Adelphia's contentions in the third-party complaint sufficiently alleged a *prima facie* aiding and abetting claim in connection with Adelphia's alleged tortious conduct related to the deepening insolvency and/or breach of duty to fund operations claims in the Complaint (Counts IV and IV, respectively).[1]

---

[1] Count IV (Deepening Insolvency), contains the following paragraphs:

> 48. Plaintiff herein incorporates by reference paragraphs 1 through 47 as if set forth at length.
> 49. ACC, acting for itself and its subsidiaries and affiliates, indicated to Devon that it would provide equity financing for Devon's activities in developing a PCS system until Devon generated sufficient income to service its own cash needs, and that it had the ability to provide that financing.
> 50. ACC, for itself and its subsidiaries and affiliates, knowingly made false representations as to their financial health and circumstances, with the intention and expectation that third parties, including Devon, would rely on those representations.
> 51. In reasonable reliance on the expected equity financing and ACC's representations as to its and its subsidiaries' and affiliates' financial circumstances, Devon entered into contracts and incurred obligations which it would not have done if it had known the truth.
> 52. As a result of ACC's representations, Devon incurred obligations which it could not meet. This led to Devon's filing of a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby causing Devon to incur substantial costs and losses associated with the bankruptcy and the disposition of its assets under unfavorable circumstances.
> 53. As a result of ACC's false representations, Devon has been damaged by the incurrence of obligations it cannot pay, the incurrence of expenses and fees in connection with the bankruptcy proceeding, and the sale of its assets under unfavorable circumstances.
> 54. Claims against Devon arising out of allegedly unpaid obligations which are currently being evaluated, excluding claims made by ACC or its subsidiaries or affiliates, total approximately $182 million.
> 55. Costs relating to the bankruptcy proceeding will be approximately $10 million.
> 56. The losses due to the unfavorable conditions of the asset sales are not yet determined.
> 57. The Liquidating Trust is entitled to recover these amounts, together with punitive damages, from ACC and its subsidiaries and its affiliates.

Count VI (Breach of Duty to Fund Operations) contains the following paragraphs:

> 61. Plaintiff incorporates herein by reference paragraphs 1 through 60 as if set forth at length.
> 62. ACC caused Devon to be established and participated in Devon's management from its inception until May, 2002.
> 63. Prior to May, 2002, ACC, for itself and its subsidiaries and affiliates, provided all financing required by Devon.
> 64. ACC caused Devon not to obtain independent sources of financing until Devon's circumstances reached a point where it could not independently obtain financing.

Adelphia did not include a cause of action for aiding and abetting in its third-party complaint. Nor did Adelphia ever argue, in its written submissions or otherwise, that the proposed third-party defendants were liable pursuant to an aiding and abetting theory for the deepening insolvency/breach of duty to fund operations claims, prior to the submission of the Reconsideration Motion. It has been Adelphia's argument throughout the pendency of this proceeding that Ms. Mead and Devon GP breached fiduciary duties owed to Devon LP and to Adelphia as limited partner and that by virtue of those fiduciary breaches, third-party defendants should be liable to indemnify Adelphia for and/or proportionally contribute to any award granted to the Liquidating Trust.[2] It may be that Adelphia's "best argument" was a cause of action against third-party defendants for aiding and abetting Adelphia in any alleged wrongdoing, but that argument was never

---

65. ACC caused Devon to transfer to ACC and/or its subsidiaries or affiliates in excess of $75 million which Devon needed top financing its operations.
66. Had Devon been properly financed, it would have succeeded in the PCS business and would have made a substantial profit.
67. By failing to continue financing, ACC caused Devon to lose substantial profit and to incur substantial losses.
68. The Liquidating Trust is entitled to recover from ACC for the losses it has suffered due to the cessation of ACC's funding, including lost profit, bankruptcy related expenses and losses, and obligations it incurred but cannot satisfy.

[2] Counts I and II of the proposed third-party complaint contain virtually the same allegations (the following is taken from Count I):

29. Third-party plaintiffs incorporate the averments contained in the preceding paragraphs of the third-party complaint as if set forth at length herein.
30. Devon, by the Liquidating Trustee, commenced an adversary proceeding against Third-party plaintiffs alleging damages for certain preferential transfers, fraudulent conveyances and breach of contract, deepening insolvency, alter ego liability and breach of fiduciary duty.
31. Third-party plaintiffs deny all liability to Devon for such alleged damages.
32. At all times relevant hereto, Third-party defendant Devon G.P., as general partner, owed fiduciary duties to Devon and Adelphia, as its limited partner.
33. At all relevant times hereto, Third-party defendant Lisa-Gaye Shearing Mead, as President of Devon G.P. and based upon her complete domination and control over Devon G.P., owed fiduciary duties to Devon and Adelphia, its limited partner.
34. Third-party defendants Devon G.P. and Lisa-Gaye Shearing Mead personally participated in the wrongs complained of in Devon's complaint against Third-party plaintiffs. If any damages are recoverable for Devon's claims, Third-party plaintiffs are entitled to contribution for any such damages from Third-party defendants Devon G.P. and Lisa-Gaye Shearing Mead based upon their liability to Devon.

10

made prior to the Reconsideration Motion, *see Contempri Homes* and *Bushman, supra*, (motion for reargument should not be used to advance new arguments available at the time the original argument was heard, and a moving party's failure to advance its best argument was not grounds to grant request for reargument). Adelphia's contention has consistently been that by virtue of the breach of fiduciary duties owed to the limited partnership and limited partner, third-party defendants were liable to Adelphia for contribution and/or indemnity. The Court has extensively reviewed the parties' submissions and the transcripts of the hearings in this matter and was unable to find any reference to an aiding and abetting cause of action. This new theory of liability was certainly available to Adelphia when it filed its third-party complaint; and Adelphia failed to plead a cause of action on that basis.

Nevertheless, the Court does not think that the third-party complaint makes out a *prima facie* cause of action for aider and abettor liability. With respect to any alternate theory of liability, the Court's main problem with the third-party complaint was, and continues to be, the absence of allegations delineating circumstances, as opposed to the use of conclusory allegations, in which third-party defendants knowingly participated in the wrongdoing complained of in the Complaint. The third-party complaint contains conclusory allegations that third-party defendants "personally participated" in the alleged wrongdoing by virtue of "domination and control" over Devon L.P., allegations supported primarily by the recitation of select provisions of the Limited Partnership Agreement delineating the third-party defendants' responsibilities in connection with managing the limited partnership.[3] At oral argument on December 15, 2004, counsel for

---

[3] There are also allegations relating to the negotiation of an amendment to the partnership agreement that was favorable to Ms. Mead; however, this amendment was never executed by the parties.

11

Adelphia stated that the inference the court should draw from the third-party complaint is that "...to the extent that as general partner, through her domination and control, **she approved it and authorized or even permitted** the transfers or the deepening insolvency, then she would, based upon her responsibilities under the partnership as the general partner, be liable on all causes of action that have been brought against Adelphia." Transcript at p. 115. And again, at the February 23, 2005 hearing, Adelphia's counsel stated "[i]f we are found liable, then she's liable, because she **authorized this and permitted it** on her watch." Transcript at p. 21. Authorization and permission of the transfers, Adelphia argues, is sufficient to state a cause of action for aiding and abetting, thereby meeting the second and third prong of the aider/abettor cause of action,[4] that the aider or abettor "...(2)...knew...that violation or conduct was occurring; and (3) substantial(ly) assisted or encouraged...the principal to engage in the violation or tortious conduct..." *Global Services Group, LLC v. Atlantic Bank of New York*, 316 B.R. 451, 462 (Bankr. S.D.N.Y. 2004).

The Court reviewed the third-party complaint to determine whether the allegations therein contained even the inference of substantial assistance in the alleged wrongdoing. "Substantial assistance includes one who affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables it to proceed." *See Goldin Assoc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 2003 WL 22218643 at *8 (S.D.N.Y. Sep. 23, 2003). "...[P]laintiff must allege some facts, in non-conclusory

---

[4] "In order to state a claim...for aiding and abetting...[plaintiff] must allege: (1) the existence of the primary violation, (2) knowledge of this violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation." *Calcutti v. SBU, Inc.*, 273 F.Supp.2d 488, 493 (S.D.N.Y. 2003). Note also that Adelphia does not admit that a primary violation occurred and in fact continues to deny any liability in connection with this adversary proceeding. See ¶ 31 of the third-party complaint; ECF Docket No. 13; ¶ 10 of the Reconsideration Motion, ECF Docket No. 56.

terms, showing that the [defendants] knowingly participated in [the tortious activity]." *Id.* at *8. The inference that can be drawn from Adelphia's assertions in the complaint is that the third-party defendants knew about the transfers at issue, and authorized them, because in the everyday operation of the limited partnership such transfers were within the purview of third-party defendants' authority. Notably, there are no allegations of connivance or collusion, and the "personal participation" as alleged in the complaint is the authorization of the transfers in the ordinary course of the limited partnership's business pursuant to the terms of the limited partnership and services agreements.

Does the third-party complaint therefore sufficiently allege substantial assistance? The question turns on whether third-party defendants authorization of the transfer of funds was in fact "substantial assistance." More than inaction must be shown because "[i]t is well settled that without an independent duty to disclose, mere inaction does not amount to substantial assistance for purposes of determining aider and abettor liability." *See Calcutti v. SBU, Inc.*, 273 F.Supp.2d 488, 494 (S.D.N.Y. 2003). A key allegation would be third-party defendants' transfer of the funds to Adelphia with knowledge that the activity was wrongful. *See Goldin, supra*, at *10-11, *see also* footnote 6, *infra*. In the *Goldin* case, defendants moved to dismiss a complaint that alleged aider and abettor liability for substantially assisting the principal in furtherance of a breach of fiduciary duty. The *Goldin* court held that in order to establish liability as an aider/abettor, the assistance had to be with knowledge of the wrongdoing. *Id.* at *11 (constructive knowledge insufficient to establish liability on an aiding/abetting theory of liability, because plaintiff must allege facts showing actual knowledge of participation in a breach of duty). Although the *Goldin* case dealt with a breach of fiduciary duty cause

13

of action, the Court believes this reasoning is applicable to the deepening insolvency context, as this Court has ruled that to be held liable for deepening insolvency, a party must have been able to foresee that the debtor was being operated for an improper purpose. *See Global Services Group, supra*, at 458. Further, a complaint that fails to allege that the "...[i]nsider defendants prolonged [debtor's] life to misappropriate the transfers...received..." does not state a cause of action for deepening insolvency. *Id.* at 461.

The third-party complaint indicates that Ms. Mead was notified of Adelphia's inability to fund Devon's operations in May, 2002, long after the events complained of in the Complaint transpired.[5] There is no other allegation that Ms. Mead knew of *Adelphia's*, as opposed to Devon's, financial circumstances at the time the disputed transfers were made. Ms. Mead's knowledge and authorization of the subject transfers must be viewed in context of Adelphia's financial situation because the causes of action in the main complaint with regard to deepening insolvency and breach of duty to fund operations, Counts IV and VI respectively, are predicated on Adelphia's representations as to its financial ability and continued willingness to fund Devon. Also, to be liable for aiding and abetting the Adelphia defendants in their alleged wrongdoing, the third-party defendants would have had to have prolonged Devon L.P.'s life primarily, if not solely, to accomplish the transfers at issue, knowing that the Devon L.P. would not be further funded by Adelphia.[6] If the third-party defendants were not aware that Adelphia was no

---

[5] Paragraph 22 of the proposed third-party complaint states: "In May 2002, Mike Mulcahey notified Lisa-Gaye Shearing Mead that Adelphia had no access to credit and that its funding of Devon would be terminated."

[6] "The essence of the deepening insolvency complaint is that defendant 'wrongfully' prolonged life, or worse, participated in a scheme to cover up debtor's true financial condition during the period when insolvency deepened." *See* Sabin Willett, *The Shallows of Deepening Insolvency*, 60 BUS. LAW. 549, 565 (2005)(citations omitted).

14

longer going to be able to fund Devon, then their knowledge and even authorization of the transfers and other events, by virtue of their day to day operation of the limited partnership, were irrelevant, because they could not appreciate the significance of the transfers at the time they were made. Therefore, the third-party complaint doesn't sufficiently allege that third-party defendants "knowingly participated" or "substantially assisted" the alleged wrongdoing such that aider and abettor cause of action may be maintained.[7]

### III. The Court's Construction of *Calcutti v. SBU, Inc.*

Adelphia takes issue with the following portion of the Court's Memorandum Decision:

> If and when Adelphia actually paid a judgment for which Devon G.P. was liable, a possible argument for veil piercing might be made by a contributing wrongdoer, if other factual indicators existed. In light of the strong preference in favor of limiting shareholder liability in New York State, however, the party seeking to bypass corporate formalities would have to actually have paid a portion of a judgment that was properly the liability of the shareholder before a contribution claim could be the foundation for a veil piercing argument. *See Calcutti v. SBU, Inc.* 273 F.Supp.2d 488, 497 (S.D.N.Y. 2003) (cause of action for contribution does not accrue until payment on the judgment is made). Memorandum Decision at 21-22.

Adelphia accuses the Court of incorrectly citing to *Calcutti* for "the above-quoted legal proposition." According to Adelphia, "no such legal proposition exists in New York…as it would fly in the face of New York's jurisprudence on the law of contribution." The following is a direct quote from the *Calcutti* case: "Claims for contribution do not accrue, for statute of limitations purposes, until six years after payment is made on the underlying claim." *Id.* at 497. The Court employed the use of a

---

[7] The Court has entered an Order denying the Leave Motion without prejudice to the Adelphia defendants' ability to bring a third-party complaint if factual circumstances are discovered that warrant third-party practice in this case.

15

parenthetical statement after citing to the *Calcutti* case, to indicate that the proposition for which the case was cited was that a cause of action for contribution does not *accrue* until after the judgment is paid. Any law student with a copy of THE BLUEBOOK: A UNIFORM SYSTEM OF CITATION (COLUMBIA LAW REVIEW ASS'N et al. eds., 17th ed. 2000), knows that the use of a parenthetical clause is recommended when "the relevance of a cited authority might not otherwise be clear to the reader." *Id.* at 28. The Court accordingly cued the reader that the *Calcutti* case was cited to stand for the proposition contained in the parenthetical statement, and not for the statement directly preceding the case citation, which in fact was an analogy drawn from a single proposition contained in the case, i.e. the time of accrual of a contribution cause of action.

In reviewing its treatment of the *Calcutti* case, it is important to reiterate what the Court did not determine in citing *Calcutti* in the Memorandum Decision – the Court did not use the *Calcutti* case for the proposition that Adelphia was not entitled to bring a cause of action for contribution until such time as a judgment had been paid. Rather, the Court's use of the *Calcutti* case was to draw an analogy with regard to the viability of Adelphia's *vei- piercing* argument. Pursuant to New York law, although an *anticipatory* action for contribution may be *prematurely* brought prior to judicial apportionment of liability by one potential joint tortfeasor for purposes of judicial economy, the actual *cause of action* for contribution does not accrue until such time as that portion of the judgment paid by the judgment debtor exceeds its actual liability. *See U.S. v. West Productions, Ltd.*, 1997 WL 16646 at * 4 (S.D.N.Y. Jan. 17, 1997) ("Under New York Law, a claim for indemnity or contribution does not accrue until the party seeking indemnification or contribution has paid the judgment at issue."); *DePaolis v. New York*

*City*, 432 N.Y.S.2d 322, 325 (Sup. Ct. 1980) (recognizing the inconsistency in New York State law which permits the anticipatory litigation of causes of action for contribution which have theoretically not accrued); *Klinger v. Dudley*, 361 N.E.2d 974, 980 (1977) (the state's highest court, the New York Court of Appeals, holds that main defendants may not recover against a third-party defendant until such main defendants have paid their respective plaintiffs an amount in excess of their respective share of the judgments against them). As stated in the Memorandum Decision, any veil-piercing action predicated upon the underlying harm alleged in the Complaint (i.e. the transfers) would belong to the Liquidating Trust. The harm alleged by Adelphia, the potential for contribution, has not actually accrued, and won't accrue until payment on any portion of a judgment for which it is not solely liable.

The fact that Adelphia may seek a *determination* of third-party defendant's liability prior to accrual of the cause of action is distinct from whether the Adelphia defendants have been currently harmed by the alleged contribution of third-party defendants. In balancing the two competing interests, i.e. the interests of judicial economy and the policy in favor of protecting shareholders by upholding the shield provided by the corporate veil, the Court determined that in the absence of other allegations of wrongdoing which resulted in harm to Adelphia, a *veil-piercing* argument could not be maintained based on a possible future finding of contributor liability. This is a separate analysis from that made by New York courts with regard to whether a contribution claim is permissible prior to accrual; it is axiomatic that it is, and the Court did not base its decision that the contribution claim was improper on the *Calcutti* case but rather on standing grounds. Nor did the Court's decision not to allow the veil-piercing

action rely solely on the above-clarified proposition; rather, the Court also determined that improper domination and control over the limited partnership, as opposed to authority over managerial decisions with respect to the limited partnership, was not sufficiently alleged to warrant a veil-piercing action.

As far as this Court has been informed, New York courts have never granted a request to pierce the corporate veil predicated on a **potential** future finding of liability pursuant to an **alleged** contribution claim. It is the moving party's burden on a motion to reconsider to show that the Court has overlooked controlling authority, *see ABB Lummus Global, supra*, at *3, and Adelphia has not cited to controlling authority that stands for a contrary proposition to the Court's decision not to allow veil-piercing predicated upon a possible future finding of contribution. The Adelphia defendants have therefore failed to meet the standard for reconsideration in this regard.

## CONCLUSION

For the foregoing reasons, the Reconsideration Motion is denied in its entirety.

The Adelphia defendants are directed to submit an Order consistent with this decision.

Poughkeepsie, New York
May 20, 2005

                                                     /s/ CECELIA G. MORRIS
                                                     Cecelia G. Morris, U.S.B.J.